**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**PATINA LAWSON,**

      Plaintiff/Counter-claim Defendant,

     v.                                                     Case No. 12-C-1190

**J.C. PENNEY COMPANY INC.,**

      Defendant/Counter-claimant.

---

# DECISION AND ORDER

Pro se Plaintiff Patina Lawson ("Lawson") proceeds *in forma pauperis* on her action against her former employer, Defendant J.C. Penney Company, Inc. ("J.C. Penney"), making claims of employment discrimination based on race and gender, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and a claim of violations of the Equal Pay Act amendment of the Fair Labor Standards Act, 29 U.S.C. § 206(d). (ECF No. 6.) By its counterclaim, J.C. Penney seeks declaratory judgment dismissing Lawson's action, claiming that this lawsuit is in breach of the June 2012 Waiver and Release Agreement between the parties. (ECF No. 16.)

## SUMMARY JUDGMENT MOTION

This matter is before the Court on J.C. Penney's motion for summary judgment (ECF No. 28) in its favor and against Lawson on her claims.

Lawson filed a document captioned as a motion for summary judgment, with attachments that include the J.C. Penney 2011 Separation Pay Plan. (ECF Nos. 36, 36-1). Despite its title, in substance the document is a response to J.C. Penney's motion for summary judgment, containing sub-captions regarding "feedback" to J.C. Penney's contentions.

Lawson also filed two other documents. One document is entitled "Feedback on the Declaration of Daniel W. Davis" ("Davis"); Davis is a senior software engineer in Supply Chain & Direct Operations for J.C. Penney, and was Lawson's manager from September 2011, until Lawson's employment was terminated. The other document is entitled "Feedback on the Declaration of Humera Kassem" ("Kassem"); Kassem is the Human Resources ("HR") Director for J.C. Penney. (ECF Nos. 37, 38.) Neither document was signed.

By a letter dated May 30, 2013, the Clerk of Court notified Lawson that she needed to sign the documents as required by Rule 11 of the Federal Rules of Civil Procedure. (ECF 38-1.) The letter also advised Lawson that if she intended the two documents to be considered affidavits or declarations, she "must either have [her] signature notarized or sign them 'under penalty of perjury.' *See* 28 U.S.C. § 1746."

On June 3, 2013, Lawson filed revised Davis and Kassem feedback documents. Each document is signed by Lawson, bears a notary's seal and the notary's statement that Lawson acknowledged the "instrument" on May 31, 2013, and produced her driver's license. (ECF Nos. 37-1, 37-2.) An acknowledgment is a formal declaration

made in the presence of an authorized officer, such as a notary public, by someone who signs a document and confirms that the signature is authentic. *Black's Law Dictionary* (9th ed. 2009), acknowledgment. However, for a statement to be an affidavit, the person making the statement must swear under oath or affirm that the statement in the document is the truth. *Black's Law Dictionary* (9th ed. 2009), affidavit. Lawson's two signed feedback documents are acknowledgments; they are not affidavits or declarations. Therefore, they do not create any factual disputes. *See* Fed. R. Civ. P. 56(c)(1)(A).

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Summary judgment should be granted when a party that has had ample time for discovery fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* If the moving party establishes the absence of a genuine issue of material fact, the non-moving party must demonstrate that there is a genuine dispute over the material facts of the case. *Id.* at 323-24. "In determining whether a genuine issue of material fact exists, all facts are construed in favor of the nonmoving party." *Springer v. Durflinger,* 518 F.3d 479, 483-84 (7th Cir. 2008).

# RELEVANT FACTS[1]

On December 1, 2004, Lawson was hired as a checkout clerk at J.C. Penney's Catalog Outlet store in Milwaukee, Wisconsin. On her job application, Lawson listed that she had a Bachelor's degree from the University of Wisconsin-Milwaukee. On March 1, 2005, four months after being hired, Lawson was promoted to Information Technology ("IT") Senior Applications Developer and transferred to the Catalog Logistic Center in Wauwatosa, Wisconsin. Although Lawson was physically located at the Wauwatosa Store Support Center ("SSC"), the Wauwatosa IT division reported to the company headquarters in Plano, Texas. On June 1, 2006, Lawson became a Project Analyst. She maintained that position until February 1, 2009, when she became an Associate Software Engineer. Lawson continued to work as an Associate Software Engineer until June 11, 2012, when her employment was terminated.

On March 28, 2012, Lawson filed a Charge of Discrimination with the Wisconsin Equal Rights Division ("ERD") alleging that between June 2, 2011, and March 28, 2012, J.C. Penney discriminated against her based on her race by denying her promotions and pay increases in violation of Title VII.[2] The ERD referred the Charge to the Equal Employment Opportunities Commission ("EEOC") for

---

[1] The relevant facts are based on J.C. Penney's proposed findings of fact. Citations to all quotations are included. The Court has supplemented those findings with other material in the record. *See* Fed. R. Civ. P. 56(c)(3).

[2] Lawson filed 109 pages of the 141-page administrative record as an exhibit to her Complaint. (*See* ECF No. 5.) This Court may take judicial notice of the administrative record because it contains adjudicative facts and is "not subject to reasonable dispute" because the source's "accuracy cannot reasonably be questioned." Fed. R. Evid. 201. *See Ennenga v. Starns,* 677 F.3d 766, 773-74 (7th Cir. 2012).

investigation, and by Notice of Charge of Discrimination dated April 4, 2012, the EEOC informed J.C. Penney that Lawson had filed a charge of race discrimination against it. (ECF No. 5 at 17.)

In February 2012, J.C. Penney had undertaken a large-scale restructuring of its business and personnel, which was designed to support its mission to transform itself into "America's Favorite Store." The reorganization included decision-making about tasks that needed to be streamlined or eliminated, and resulted in the elimination of numerous positions in various business units.

On April 5, 2012, J.C. Penney announced its restructuring plans to more than 600 employees. The IT business unit felt a large part of that restructuring impact. Many employees at the company headquarters lost their jobs. The Wauwatosa SSC was included in the position elimination process, and two positions at that facility were eliminated: a Software Engineer 2 position and Lawson's Associate Software Engineer position.

On April 5, 2012, Lawson attended a meeting at the Wauwatosa SSC with her supervisor, Davis, and local HR Team Member Mary Wabiszewski ("Wabiszewski") to learn about the Separation Pay Package[3] and force reduction. Corporate Team

---

[3] In her submissions, Lawson asserts that Wabiszewski did not discuss the "Separation Pay Package" and said that it would be mailed to Lawson's home. Lawson may be using the term "Separation Pay Package" interchangeably with the term "Separation Pay Program." As best the Court can discern, despite similar names the two appear to be distinct components of the reduction-in-force materials. The "Separation Pay Package" was discussed at the April 5, 2012, meeting. The "Separation Pay Program" was not discussed at the April 5, 2012 meeting and was mailed to Lawson's home on May 23, 2012.

Member, Randy Goddard ("Goddard") participated in the meeting by conference call. Goddard thanked Lawson for her years of service, informed her that her employment was being terminated due to the company's restructuring, and indicated that day was the last Lawson was to report to work in order to allow her to start her job search immediately. Goddard also told Lawson that she would remain on the payroll through June 11, 2012, she would continue to receive her current benefits until June 30, 2012, and she would receive outplacement training and assistance. At the time her employment was terminated, Lawson's annual salary was $52,155.

On April 12, 2012, Lawson filed an Amended Charge of Discrimination with the ERD alleging that between June 2, 2011, and April 5, 2012, J.C. Penney discriminated against her based on her race by denying her promotions and pay increases and terminating her employment in violation of Title VII. (ECF No. 5 at 8.)

On April 20, 2012, the EEOC notified J.C. Penney that Lawson had filed an amended charge of discrimination and set May 4, 2012, as the date by which J.C. Penney was to respond. (*Id*. at 12.) By a letter dated April 24, 2012, J.C. Penney asked the EEOC to extend the deadline for it to file its response to Lawson's charge. (*Id*. at 42.)

On May 23, 2012, J.C. Penney mailed Lawson a "Waiver and Release Agreement" ("Waiver" or "Release") for her review. Pursuant to the J.C. Penney Separation Pay Program, Lawson was offered severance pay of $8,174.71 in return for executing the Release.

The Release states that Lawson had at least 45 days to consider whether to execute the Release and that she had read the Waiver carefully and understood its terms. The Release also states that Lawson acknowledged that she was given an adequate period of time to consider the Waiver, she carefully read and understood the Release, and "willingly, knowingly and voluntarily" entered into the Release. (Kassem Decl. ¶ 18(g), Ex. A ¶¶ 3.1, 3.3, 18.) (ECF Nos. 32, 32-1.) Additionally, the Release states that Lawson was "advised to consult with the attorney of [her] choice before signing [the Release]." (*Id.* at ¶ 18(f), Ex. A ¶¶ 3.4, 18.) The Release contains the following choice of law provision: "You understand and agree that this Release shall be deemed to have been entered into in the State of Texas, and that all questions concerning the validity, interpretation or performance of any of its terms or provisions . . . shall be governed and resolved in accordance with the laws of the state of Texas." (*Id*. at Ex. A, ¶ 16.)

The Release states that "[n]o oral understandings, statements, promises or inducements contrary to the terms of this Agreement exist. . . . This Agreement cannot be changed or terminated orally, but may be changed only through a written addendum signed by both Parties." (*Id.* at ¶ 18(h), Ex. A ¶ 4.1.)

The Release states:

> For good and valuable consideration, the receipt and sufficiency of which You hereby acknowledge, You irrevocably and unconditionally release any and all Claims, as defined below, that You may now have against the Releasees . . . You agree to release the Company . . .

> from all actions . . . arising out of or in any way connected with or related to Your employment or the termination of Your employment, to the fullest extent permitted by law. . . . The released Claims include any claim . . . that You . . . have now, have had in the past, or may have had against the Releasees, whether known or unknown, suspected or unsuspected, at the time of signing this Release and the Effective Date, as that term is defined in Sections [sic] 3.6 below.

(Ex. A ¶ 2.)

The released claims include "[a]ny claims arising under any federal, state or local anti-discrimination or anti retaliation law . . . and those that prohibit discrimination based on race . . . sex . . . Such claims include . . . Title VII of the Civil Rights Acts of 1964." (*Id.* at ¶ 18(c), Ex. A ¶ 2) Lawson also released "[a]ny claim for lost, unpaid, or unequal wages . . . including but not limited to claims arising under . . . the Equal Pay Act. (*Id.* at ¶ 18(d), Ex. A ¶ 2.)

Paragraph 3.6 of the Release states that Lawson had the right to revoke the release within seven calendar days of the date that she signed the Release (the "Revocation Period") by "providing written notice of [her] revocation to the person listed in the box on the first page of this Agreement." (*Id.*, Ex A ¶ 3.6.) Paragraph 3.6 further states that "[i]f You revoke this Agreement You will not be eligible to receive Separation Pay. This Agreement will become effective and enforceable on the first calendar day following the expiration of the seven (7) day Revocation Period (the "Effective Date"), provided You do not revoke it in the manner described above." (*Id.*)

Directly above the signature line, the following statement is printed in bold capital letters:

> **TAKE THIS RELEASE HOME, READ IT, AND CAREFULLY CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT. IT INCLUDES A RELEASE OF UNKNOWN AND KNOWN CLAIMS. YOU MAY TAKE ADVANTAGE OF THE FULL CONSIDERATION PERIOD AFFORDED BY THIS RELEASE AND YOU ARE ENCOURAGED TO CONSULT YOUR ATTORNEY.**

(*Id.* at ¶ 19.)

On June 10, 2012, Lawson signed the Release and returned it to J.C. Penney. Lawson received a severance check in the amount of $8,174.71 in return for executing the Agreement. Lawson cashed the severance check and never revoked her acceptance of the Release.

On July 17, 2012, J.C. Penney filed a position statement with the EEOC. Page seven of the statement reads: "Ms. Lawson elected to sign the Waiver and Release on June 10, 2012 and returned it to [J.C. Penney]. She will receive separation benefits in the amount of $8,174.71 in exchange of a release of all claims against [J. C. Penney]." (ECF No. 5 at 50). On November 5, 2012, the EEOC issued a Dismissal and Notice of Rights notifying Lawson that she had 90 days to file an action based on her charge. (*Id.* at 2.) On November 26, 2012, Lawson filed this action alleging that J.C. Penney discriminated against her on the basis of her race (African-American) and sex in the terms and conditions of her employment; that J.C. Penney terminated her employment

because of her race and sex and in retaliation for protected activity; and that J.C. Penney violated the Equal Pay Act.

## ANALYSIS

J.C. Penney argues that Lawson signed a valid and enforceable waiver and she should be held to her end of the bargain which requires dismissal of this action. In addressing the validity and enforceability of the Release, J.C. Penney cites decisions of the Courts of Appeals for the Fifth and Seventh Circuits, district courts within those circuits, and Texas and Wisconsin state courts.

Lawson contends that she was not informed that J.C. Penney was restructuring its business until she entered the human resources office on the day her employment was terminated. Lawson also contends that the Separation Pay Package was not discussed, the Waiver was never explained to her, and she was not aware she was giving up her rights. She also contends that, although J.C. Penney states she had 45 days to revoke the agreement, the document said she had seven days.

It is undisputed that Lawson was not aware that J.C. Penney was restructuring until April 5, 2012. The issues presented by J.C. Penney's motion and Lawson's submissions are whether the Waiver and Release signed by Lawson is enforceable, and whether the Release is unclear with respect to the number of days allowed to revoke it.

The Release states that it must be considered as if it was entered into in the state of Texas and that all questions concerning its validity and the interpretation of any of its terms and provisions must be governed by and resolved in accordance with

the laws of the state of Texas. However, "[w]hether a Title VII release was properly obtained is to be determined by federal rather than state law." *Rogers v. Gen. Elec. Co.,* 781 F.2d 452, 454-55 (5th Cir. 1986). The interpretation and validity of a release of claims under Title VII is governed by federal law. *Williams v. Phillips Petroleum Co.,* 23 F.3d 930, 935 (5th Cir. 1994). Because Texas is included in the geographic area over which the Fifth Circuit Court of Appeals presides, the Court applies the case law of that circuit in considering the issues presented this action.

Employees may validly release only Title VII claims that are connected to "discriminatory acts or practices which antedate the execution of the release." *Rogers,* 781 F.2d at 454 (citing *United States v. Allegheny–Ludlum Indus., Inc.*, 517 F.2d 826, 853 (5th Cir. 1975)). In other words, for a release of any Title VII claim to be valid, any released claims must relate to discriminatory acts or practices that occurred *earlier* than the actual date of the release. In *Rogers* the Fifth Circuit found that the release in question was not a prospective waiver because: "[the plaintiff] signed the release in the instant case on August 8, 1983, and, by the express terms of the release, waived only those Title VII claims arising 'on or before' that date. No future claims were waived nor did the district court apply the release to a claim arising after the release was executed." *Id.* at 455.

Furthermore, a release waiving rights arising under Title VII must be both knowing and voluntary. *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 51 n.15 (1974) ("In determining the effectiveness of any [Title VII] waiver, a court would have

to determine at the outset that the employee's consent to the settlement was voluntary and knowing.") "In determining whether a release was knowingly and voluntarily executed, federal law requires that a valid waiver is not to be 'lightly inferred.'" *Rogers,* 781 F.2d at 454-55 (citation omitted).

The Fifth Circuit Court of Appeals has adopted a "totality of the circumstances" approach to determine whether a release was knowingly and voluntarily executed. *See O'Hare v. Global Natural Res., Inc.,* 898 F.2d 1015, 1017 (5th Cir. 1990). The employer bears the burden of establishing that its former employee "signed a release that addresses the claims at issue, received adequate consideration, and breached the release." *Williams,* 23 F.3d at 935. If the employer fulfills that burden, the former employee must "demonstrat[e] that the release was invalid because of fraud, duress, material mistake, or some other defense." *Id.*

To determine whether the former employee has met the burden of establishing a defense to the validity of the release, the Court is to examine the following relevant factors:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of [the] plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*See Smith v. Amedisys Inc.,* 298 F.3d 434, 441 (5th Cir. 2002) (citation omitted).

The record before the Court establishes that Lawson signed the Release on June 10, 2012. The Release expressly stated that Lawson was releasing Title VII claims of sex and race discrimination, retaliation, and claims under the Equal Pay Act. Furthermore, the Release was obtained for adequate consideration – specifically, in exchange for her release of all claims against J.C. Penney, Lawson received $8,174.71 that she would not otherwise have been entitled to by contract or law. The amount equals about one-sixth of Lawson's annual salary at the time of the termination of her employment. Furthermore, the existence and continuation of Lawson's administrative discrimination claims (*see* paragraph six of the Release) and her filing of this action are in breach of the Release. Despite construing the facts and the reasonable inferences from those facts in the manner most favorable to Lawson, J.C. Penney has established the voluntary nature of the Release.

Lawson asserts that she was not aware she was giving up her rights. She also impliedly asserts that J.C. Penney did not explain the Release to her. One factor to be considered in determining whether under the totality of the circumstances the release is invalid is the plaintiff's education and business experience. Lawson has a college degree and worked for J.C. Penney over seven years.[4]

With regard to factor two, the record does not disclose the date that Lawson

---

[4] Lawson's brief also states that prior to working for J.C. Penney she had seven additional years of experience in the information technology field. (Pl.'s Mot. Sum. J., 1.) (ECF No. 36.) Lawson's unsworn statement does not establish the information as fact. However, if considered, additional years of business experience would support upholding the waiver.

received the agreement in the mail. However, the agreement advised her that she had 45 days to consider the release, and she signed the agreement within 18 days of its mailing. Lawson had more time to deliberate about the agreement than she used.

Lawson suggests that although J.C. Penney states that she had 45 days to revoke the agreement, the document said she had seven days. Lawson is apparently confusing the 45 days to consider the agreement with the seven-business-day period she had to revoke her acceptance of the agreement. Despite Lawson's current contentions, it is undisputed that she cashed the severance check, and there is no evidence that she ever attempted to revoke her acceptance of the Release. To the extent that Lawson may be confused now, there is no indication that she was confused at the time she entered into the agreement.

Addressing factors three through six, the agreement was written by J.C. Penney and there is no evidence that Lawson had any opportunity to decide or revise its terms. The Agreement is eight pages of about 11-point font type. While there is a lot of detail and the entire Agreement would have to be read carefully, and perhaps multiple times, by a lay person, the critical parts are easily understood and some important portions are repeated. Although the document advised Lawson twice to consult with an attorney before signing it, there is no evidence that she did so. In exchange for signing the Release, Lawson received consideration of $8,174.71 to which she otherwise would not have been entitled by contract or by law.

Despite having considered the facts and the reasonable inferences from those

facts in the light most favorable to Lawson, they are insufficient for a reasonable jury to find that she did not knowingly and voluntarily agree to the Release. Therefore, the Court must grant J.C. Penney's motion for summary judgment on its counterclaim and dismiss Lawson's action against it.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

J.C. Penney's motion for summary judgment (ECF No. 28) on its counterclaim action and dismissal of Lawson's action against it is **GRANTED**.

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 13th day of March, 2014.

                                      **BY THE COURT:**

                                      */s/ Rudolph T. Randa*
                                      **HON. RUDOLPH T. RANDA**
                                      **U.S. District Judge**